# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN PAUL GOMEZ, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Civil No. 07-868<br>) Judge Nora Barry Fischer |
| OFFICER JAMES MARKLEY, | )<br>) |
| Defendant. | )<br>) |

## **MEMORANDUM OPINION**

Pending before the Court are two motions filed by *pro se* plaintiff John Paul Gomez ("Gomez"). He moves for judgment notwithstanding the verdict or, in the alternative, for a new trial. (Docket No. [161]). Both were filed with the Court on April 21, 2011. Defendant, Officer James Markley ("Markley"), opposes these motions. (*See* Docket Nos. [166], [167]). For the following reasons, Gomez's motions (Docket No. [161]) are DENIED.

## I. FACTUAL BACKGROUND

The factual background of this case is presented in great detail in this Court's memorandum opinion on Defendant's motion for summary judgment. (Docket No. [51], 1-8). *See also Gomez v. Markley*, 385 Fed. App'x 79, 80-81 (3d Cir. 2010) (unpublished) (presenting factual background of the case) (hereinafter, "*Gomez*"). Due to the detailed history contained in these documents, the Court will only briefly summarize the facts as relevant to the currently pending motions.

In the evening of March 26, 2007, Markley pulled over Gomez's car. (Docket No. [51] at 2). Markley informed Gomez that the car's inspection stickers were inadequate. (*Id.*). Gomez provided Markley with his license, registration and insurance information. (*Id.*). After reviewing

these documents, Markley returned briefly to his patrol car. (*Id.*). Markley then returned to Gomez's vehicle and informed Gomez that his license was suspended and his registration was expired. (*Id.*).

At this point, Markley requested that Gomez exit his vehicle, whereupon Markley proceeded to search Gomez's person. (*Id.* at 2). Markley found no weapons as a result of this search. (Docket No. [23]-1 at ¶ 18). This constitutes the "first" search performed by Markley, and it was construed by this Court as a *Terry* search.[1] (Docket No. [51] at 15).

After performing the *Terry* search, Markley returned to his patrol car briefly. *Gomez*, 385 Fed. App'x at 81. Markley once again returned to Gomez's vehicle and ordered Gomez out of the car. *Id.* Markley then requested Gomez's consent to search the vehicle. *Id.* Gomez asserts that he became "nervous about Markley's intentions," and thus refused to give his consent to Markley's search. *Id.*

At this point, the facts are disputed. Markley claims that he observed a marijuana seed on Gomez's driver's seat. (Docket No. [23] at ¶ 17). Gomez denies having any drugs in his car. (*Id.* at ¶ 18). Markley testified at trial that he did not actually engage in the second search. (*See* Trial Transcript ("T.T.") 2/1/11 at 80 (the Court observed that "Markley testified that the [contraband] search never happened.")). Gomez, for his part, claims that Markley began making racially charged statements and that Markley falsely claims to have found drugs in the car. Gomez maintains that Markley would not show Gomez what he found, despite Gomez's inquiries. *Gomez*, 385 Fed. App'x at 81. This search, to the extent that it happened, constitutes the "second" alleged search performed by Markley. (*See* Docket No. [51] at 15).

---

[1] The *Terry* Search is simply a protective search for weapons, which search can be done without probable cause, when an officer has a reasonable suspicion that the person is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 24 (1968).

The Court of Appeals felt that there were sufficient questions of fact related to this second search to overcome Markley's motion for summary judgment. *Gomez*, 385 Fed. App'x at 83. Gomez himself expressly acknowledged the fact that there was a question as to whether the second search even occurred. At trial, he stated that the actual occurrence of the second search was "my word against an officer's word." T.T. 2/1/11 at 169. The jury found that Gomez failed to establish by a preponderance of the evidence that Markley had performed the second search. T.T. 2/2/11 at 87-88. Thus, the factual dispute recognized by the Court of Appeals was resolved in favor of Markley at trial.

Finally, Markley informed Gomez that his car was to be impounded and handed Gomez an inventory form to sign. *Gomez*, 385 Fed. App'x at 81. The car was towed, and an inventory search was performed by Markley. (Docket No. [51] at 24). This constitutes the "third" search for which Gomez claimed a constitutional violation of his Fourth Amendment rights.

## II. PROCEDURAL BACKGROUND

After Gomez filed his Complaint on July 5, 2007, (*see* Docket No. [5]), Markley filed a motion to dismiss in the form of summary judgment on November 5, 2007. (*See* Docket No. [22]). Gomez then filed a cross-motion for summary judgment on February 19, 2008, (Docket No. [33]), and an amended cross-motion for summary judgment on March 18, 2008. (Docket No. [42]). In an opinion dated July 28, 2008, this Court denied Gomez's motion and granted Markley's motion in full. (*See* Docket No. [51]).

With respect to Gomez's claims of unconstitutional search and seizure, this Court found that there were three possible searches. (*Id.* at 15). The first, as mentioned above, constituted a *Terry* search. (*Id.*). The second, according to this Court, was a search for contraband, "*to the*

3

*extent that it happened.*" (*Id.*) (emphasis added). The third was an inventory search. (*Id.*) This Court granted summary judgment to Markley with respect to all three searches. (*Id.* at 16).

The Court of Appeals read Gomez's challenge on appeal as limited to the second and third searches. *Gomez*, 385 Fed. App'x at 82 n.1 ("We do not understand Gomez to challenge the first search…"). The Court of Appeals concluded that this Court had appropriately granted summary judgment with respect to the third search. *Id.*

However, the Court of Appeals did take issue with this Court's granting Markley summary judgment as to the second (contraband) search. *Id.* at 5. The Court of Appeals observed that several facts were in dispute and, if they were viewed "in the light most favorable to Gomez," they would not support a finding of probable cause. *Id.* at 7. At no point did the Court of Appeals conclude that the second search had occurred, or that Markley lacked probable cause. *See generally Gomez*, 385 Fed. App'x 79.

After the Court of Appeals remanded the case "for further proceedings consistent with [its] opinion" on August 9, 2010, *id.* at 8, this Court, in accord with that mandate, proceeded to trial on January 31, 2011. (*See* Docket No. [112] (scheduling trial for Jan. 31, 2011)). Prior to trial, the parties reached a stipulation that the Court and Gomez referred to in trial. *See* T.T. 1/31/2011 at 21, 28).[2] Trial ended on February 2, 2011,[3] whereupon the jury concluded that Markley had *not* conducted the alleged second search. (*See* Docket No. [142]). Because the only remaining issues before this Court were whether that search had occurred, and if it had, whether

---

[2] The stipulated facts were that Markley lawfully stopped Gomez in his vehicle, Markley conducted a constitutional search for weapons of Gomez's vehicle, Markley performed a constitutional inventory search of Gomez's car, Gomez was cited for driving with an expired registration and no inspection, Gomez was found not guilty of driving with a suspended license, and Markley was acting under color of state law. T.T. 1/31/2011 at 21-22.

[3] Trial was bifurcated, with liability to be tried first. (*See* Docket Nos. [123]-[124]).

Markley had probable cause to perform that search, judgment was entered in favor of Markley that same day. (*See* Docket No. [143]).

At the end of the trial, Gomez orally moved for judgment notwithstanding the verdict. T.T. 2/2/2011 at 92. Gomez then filed a written motion with the Court on February 7, 2011. (*See* Docket No. [145]). After Gomez failed to submit his share of the fees for trial transcripts, (*see* Docket No. [144]), the Court issued an Order on March 9, 2011 requiring Gomez to show good cause for his failure to comply with the Court's Order. (*See* Docket No. [146]). After Gomez responded to the Show Cause Order, (*see* Docket No. [147]), the Court scheduled a hearing regarding same. (*See* Docket No. [148]). After Gomez failed to attend the hearing due to claimed car trouble, (*see* Docket No. [151]), the hearing was rescheduled for April 12, 2011. (Docket No. [152]). At the April 12 hearing, Gomez informed the Court that he would be filing a motion to proceed *in forma pauperis*. (*See* Docket No. [156]).

Three days later, on April 15, 2011, Gomez withdrew his motion for judgment notwithstanding the verdict and moved this Court to "Render Judgment in this Matter." (Docket No. [158]). Shortly thereafter, on April 21, 2011, Gomez filed a "Notice to the Court for Purposes of the Record," (Docket No. [160]), in which he accused this Court of engaging in "trickery" in an effort to avoid appeal of the Court's "erroneous and blatant disregard of the [T]hird [C]ircuit's mandate…" (*Id.* at 3).[4] That same day, he also filed the instant motions for new trial and judgment notwithstanding the verdict, as well as a notice of appeal. (*See* Docket Nos. [161]-[162]). Defendant responded on April 29, 2011. (*See* Docket Nos. [166]-[167]). On May 5, 2011, the Court of Appeals ordered Gomez's appeal stayed pending disposition of the

---

[4] The Court denies any "trickery." In response to Gomez's claims, the Court's deputy and law clerk have filed Affidavits detailing their procedures. (*See* Docket Nos. [163], [165]).

5

instant motions. (*See* Docket No. [173]). Because Gomez's motions are fully briefed, they are now ripe for disposition.[5]

### III. STANDARD OF REVIEW

#### a. Motion for New Trial

A party's motion for new trial pursuant to Federal Rule of Civil Procedure 59 may be granted after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED.R.CIV.P. 59(a)(1)(A). Typically, a new trial is granted in certain limited situations, including: (1) when the jury's verdict is against the clear weight of the evidence; (2) when new evidence surfaces that would have altered the outcome of the trial; (3) when improper conduct on the part of an attorney or the court unfairly influenced the verdict; or (4) where the jury's verdict was facially inconsistent. *Davis v. Mountaire Farms, Inc.*, 598 F.Supp.2d 582, 587 (D.Del. 2009).

The degree of discretion accorded the court in granting or denying a motion for new trial is dependent upon which of these errors is alleged. *Moussa v. Commonwealth of Penn. Dep't of Pub. Welfare*, 289 F.Supp.2d 639, 648 (W.D.Pa. 2003) (citing *Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993)). Where the motion is based on a claim that the verdict is against the clear weight of the evidence, the court's discretion in granting the motion is very limited. The verdict must be "contrary to the great weight of the evidence; that is, where a miscarriage of justice would result if the verdict were to stand." *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 453 (3d Cir. 2001). So long as there is plausible or rational basis for the verdict, it may not be set aside. *Moussa*, 290 F.Supp.2d at 648. When the basis for the motion is an alleged error on the part of

---

[5] The Court of Appeals for the Third Circuit has stayed Gomez's appeal pending disposition of the pending motion. (*See* Docket No. 173). During this stay, the parties were directed to file written reports on the status of the instant motion on June 3, 2011 and every thirty days thereafter until the final pending motion was decided. (*Id.*).

the court, such as an error in jury instructions, a district court must first determine whether an error was made, i.e. "whether, taken as a whole, the instruction properly apprised the jury of the issues and the applicable law." *Donlin v. Philips Lighting N. America Corp.*, 581 F.3d 73, 78 (3d Cir. 2009). If there was an error, the court must then determine "whether that error was so prejudicial that refusal to grant a new trial would be 'inconsistent with substantial justice.'" *Bhaya v. Westinghouse Elec. Corp.*, 709 F.Supp. 600, 601 (E.D.Pa. 1989) (quoting FED.R.CIV.P. 61).

### b. Motion for Judgment Notwithstanding the Verdict

Judgment notwithstanding the verdict is merely a traditional way of saying judgment as a matter of law. *See Whelan v. Abell*, 48 F.3d 1247, 1250 n.1 (D.C. Cir. 1995). Regardless of its name, because Gomez made the motion *after* the jury returned its verdict, *see* T.T. 2/2/2011 at 91-92, his motion must be considered under Rule 50(b). Under this rule, the judgment Gomez seeks may be granted only if, "as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001). "The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict." *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995). In performing this examination, the court "must refrain from weighing the evidence, determining the credibility of witnesses, or substituting [its] own version of the facts for that of the jury." *See Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 300 (3d Cir. 2007).[6] Further, the facts must be

---

[6] The Court is aware that *Marra* states its standard as the Circuit Court's standard of review. *Marra*, 497 F.3d at 300. However, the *Marra* Court also noted that the Court of Appeals "appl[ies] the same standard as did the District Court." *Id.*

viewed in the light most favorable to the nonmoving party. *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990). The result is that judgment as a matter of law is relief that should only be granted "sparingly." *Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 433 (3d Cir. 2009); *CGB Occup. Therapy Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004) ("*CGB Therapy*").

IV. ANALYSIS

    a. **The Parties' Arguments**

In his present motions, Gomez argues that the mandate from the Court of Appeals to this Court requires an outcome at odds with the jury's findings. Gomez maintains that "the defense wants to have its cake and eat it too" because Markley takes the position that the Court of Appeals "settled" the issue of the first and third searches, but did not "settle" the issue of the second search. (Docket No. [174] at 2). According to Gomez, the Court of Appeals "settled" that this Court "determined" that all three searches occurred, and that, therefore, the issue was whether Markley had probable cause to conduct the second search. (*Id.*).

The crux of his argument is that allowing the jury to determine whether the second search occurred "re-litigate[s] an issue already determined" by the Court of Appeals. (*Id.* at 3). Gomez therefore argues that "law of the case" doctrine requires he be granted judgment as a matter of law. (*See id.* at 6-8). The remainder of Gomez's brief in support of his motion merely attempts to substitute his claimed facts for facts found by the jury during trial. (*See, e.g., id.* at 5 ("Officer Markley lied about finding drugs in my car…")).

Markley responds that neither this Court nor the Court of Appeals determined, as a matter of fact or as a matter of law, that the second search actually occurred. (Docket No. [167] at 10). Thus, Gomez's motion is meritless. (*Id.*). Markley also notes that, even if Gomez is correct in his

8

assertion that the Court of Appeals' mandate limited the triable questions to whether Markley had probable cause, judgment as a matter of law is inappropriate because material factual disputes exist with regard to that question and the jury did not reach a verdict as to whether probable cause existed. (*Id.* at 11). Moreover, both Gomez's present JNOV[7] and new trial motions were filed outside the 28-day window allowed by Federal Rules of Civil Procedure 50(b) and 59(b).

    b. **Motion for New Trial**

Although this Court expresses serious doubts as to the substantive merits of Gomez's motion for new trial, the Court does not engage in an analysis as outlined above. Instead, the Court observes that "a motion for a new trial must be filed no later than 28 days after the entry of judgment." FED.R.CIV.P. 59(b). Despite Gomez's repeated assertions that he was unaware that the Court had entered judgment at trial, (*see, e.g.*, Docket No. [170]), the fact that he was prepared to enter a motion notwithstanding the verdict indicates to the Court that he was (or should have been) aware of Rule 59 because it is cross-referenced by Rule 50. *See* FED.R.CIV.P. 50(b). Still, Gomez did not move for a new trial until April 21, 2011 – more than two months after judgment was entered. (*See* Docket No. [143] (judgment entry)). Further, as Markley points out, Gomez's Rule 50 motion cannot be considered to include a motion for new trial because

---

[7] Again, Gomez first filed an oral motion for judgment notwithstanding the verdict on February 2, 2011. (*See* Docket No. 140). He supplemented this oral motion with a written filing on February 7, 2011. (Docket No. 145). Gomez then filed a motion to withdraw the pending JNOV motion on April 15, 2011, (Docket No. 158), and the Court granted the motion to withdraw on the same day. (Docket No. 159).

motions must "state with particularity the grounds for seeking the order"[8] and to "state the relief sought." (Docket No. [167] at 13 n.10).

With respect to the extremely late filing of Gomez's motion, the Court notes that it has no power to grant a motion for new trial outside of the time period provided for in Rule 59. *See* FED.R.CIV.P. 6(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 59(b), (d) and (e), and 60(b).")' *Sonnenblick-Goldman Corp. v. Nowalk*, 420 F.2d 858, 860 (3d Cir. 1970) ("Rule 6(b) [of the Federal Rules of Civil Procedure] has been determined to render a court without power to extend the time for service of motions."). Nor may Gomez blame the Court for his failure to monitor the docket. Despite being a *pro se* party, all "parties have an obligation to monitor the docket sheet to inform themselves of the entry of orders they wish to appeal." *United States ex rel. McAllan v. City of New York*, 248 F.3d 48, 53 (2d Cir. 2001).

In addition, Gomez was repeatedly reminded that he had a duty to comply with the Court's rules, policies, and procedures. Indeed, the Court admonished Gomez for his repeated dilatory conduct long before he filed the pending motion. (*See* Docket No. [128]). Moreover, Gomez admits to some knowledge of the litigation process. (*See* Docket No. [170] at ¶ 6). His admission speaks directly to an understanding of deadlines: "I've invoked many appeals in the Honorable Seventh District Court of Appeals in the State of Ohio, some of which were ruled in my favor, thus very familiar of the rules of appellate procedure in that I have 30 days to appeal a final appealable order or judgment." (*Id.*). Given this Court's reminders to Gomez of the repercussions of his dilatoriness and Gomez's own admission that he is aware of and capable of following procedural rules, the Court sees no plausible justification for his tardiness in filing the

---

[8] To date, Gomez has refused to pay his share of the costs of transcription. Lacking any factual basis for his claim that a new trial is called for, all of Gomez's allegations are conclusory, and not in conformity with Rule 50.

motion for new trial. Due to these procedural defects, this Court denies Gomez's motion for new trial.

### c. Motion for Judgment Notwithstanding Verdict

The Court first observes with respect to Gomez's motion for judgment that the motion was untimely filed under Rule 50. That Rule states that, "[n]o later than 28 days after the entry of judgment… the movant may file a renewed motion for judgment as a matter of law…" Fed.R.Civ.P. 50(b). Although Gomez's first JNOV motion was timely filed, the instant motion was filed on April 12, 2011, (Docket No. [161]) – well beyond 28 days after judgment was entered on February 2, 2011. (Docket No. [143]).

The Court also observes that Gomez failed to comply with the Court's Order dated February 3, 2011, which required Gomez to split the costs of the trial transcripts necessary to his motion for judgment as a matter of law. (*See* Docket No. [144]). The Order expressly states that "[f]ailure to abide by [the Court's orders] may result in the imposition of sanctions, including that an untimely filing may not be considered." (*Id.*). The Court Reporter informs the Court that Gomez has not yet paid his portion of the costs of transcription. Because Gomez has failed to abide by the express Order of this Court, and that Order made clear that sanctions may result in his untimely filings not being considered, the Court may refuse to consider his motion. *See Pearson v. Exide Corp.*, 2001 WL 872452, *4 (E.D.Pa. 2001) (refusing to consider objections that were untimely filed and which failed to abide by the court's order).[9]

---

[9] The Court notes that, if its denial of Gomez's motions were based entirely on his failure to abide by a court order, then such denial would be analogous to a dismissal under *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984). The *Poulis* framework requires a court to consider: 1) the extent of the party's personal responsibility; 2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; 3) a history of dilatoriness; 4) whether the conduct of the party or the attorney was willful or in bad faith; 5) the effectiveness of sanctions other than dismissal; and 6) the meritoriousness of the claim or defense. *Id.* at 868. Even applying the *Poulis* framework, this Court would find that denial of the

Turning to the substantive issues, the Court reads Gomez's motion for judgment notwithstanding the verdict as presenting two issues. First, by repeatedly stating that Markley is lying or falsely producing evidence, (*see* Docket No. [174] at 5-6), it seems to the Court that Gomez is arguing that the jury's findings are incorrect. Second, Gomez also asserts that allowing the jury to decide the question of whether the second search even occurred is contrary to the mandate from the Court of Appeals. (*Id.* at 8). He seems to argue that the appropriate jury instruction would have considered only the question of probable cause. (*See* Docket No. [161] at ¶ 3).

With regard to the factual questions settled by the jury verdict, the Court reiterates that judgment as a matter of law should be granted only sparingly. *Eshelman*, 554 F.3d at 433; *CGB Therapy*, 357 F.3d at 383. The Court must therefore be cautious about inserting its judgment regarding the veracity of Gomez's assertions for the findings of the jury. *See Marra*, 497 F.3d at 300. The Court is also conscious of the fact that there was an adequate basis for the jury finding for Markley. As Gomez acknowledged, this case was "[his] word against an officer's word." T.T. 2/1/11 at 169. If the Court is to presume that Gomez's "word" is a sufficient basis for verdict in his favor, then Markley's word, too, must provide a sufficient foundation for a jury to find in favor of Markley. Because it is the jury's role to determine the credibility of the witnesses and to weigh the evidence,[10] the Court will not substitute its judgment (or Gomez's) for that of

---

motion for new trial is appropriate. (1) Gomez is acting *pro se*, so he is personally responsible for prosecuting his case and adhering to the Court's orders. (2) Granting an untimely motion for judgment as a matter of law prejudices Markley. (3) Gomez has a history of dilatoriness. (4) There is no evidence that Gomez's filing was done in bad faith. (5) There are no other effective sanctions for an untimely filing for judgment as a matter of law. Finally, (6) Gomez's argument lacks legal merit. Therefore, if this Court's denial of Gomez's motion was based solely on his failure to abide by the Court's Orders, denial would still be appropriate because five of the six *Poulis* factors weigh in favor of denial of Gomez's motion.

[10] *See, e.g.*, *Lavender v. Kurn*, 327 U.S. 645, 653 (1946):

the jury. The Court finds no justification for judgment as a matter of law based on Gomez's factual arguments, and therefore turns to his argument that the mandate from the Court of Appeals requires judgment as a matter of law

### i. The Summary Judgment Procedure

Gomez's argument that the Court of Appeals "settled" the question of whether the second search occurred fails to grasp the intricacies of the summary judgment procedure. Upon a motion for summary judgment, a court must construe the disputed facts in the light most favorable to the nonmoving party. *See Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). This means that, where there is a disputed fact, a court will presume that the version of the facts put forth by the nonmoving party is the correct version.

Thus, in analyzing Markley's summary judgment motion, this Court *assumed that Gomez's version of the facts was correct*. It follows that the Court assumed that the second search had actually occurred, even though it expressed doubt as to this fact. (*See* Docket No. [51] at 15 (characterizing the second search, "to the extent that it happened," as a contraband search)). At oral argument, Gomez even admitted that the court had given him the benefit of the doubt.[11] Because Gomez's challenge at the Court of Appeals turned on whether the search was

---

    Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion.

[11] Gomez stated at oral argument that the Court "give[s] me the benefit of the doubt. [The Court] view[s] the facts most favorable to me because that is Rule 56. That's the way you are supposed to proceed…" *See* T.T. 2/1/2011 at 50.

constitutional, not whether it happened, that Court did not determine that the search had actually happened.

Furthermore, taken to its logical conclusion, Gomez is effectively arguing that, because the Court of Appeals reversed this Court's grant of Markley's summary judgment motion, the appellate court actually granted Gomez summary judgment on the question of whether the second search occurred. However, "[i]n most cases, an appellate court reversing a grant of summary judgment will not direct the district court to enter a summary judgment order in favor of the appellant because a genuine issue of material fact will remain." *Nazay v. Miller*, 949 F.2d 1323, 1328 (3d Cir. 1991) (citing *First Nat. Bank of Pennsylvania v. Lincoln Nat. Life Ins. Co.*, 824 F.2d 277, 281 (3d Cir. 1987)). The Court of Appeals did not state that it was granting summary judgment in favor of Gomez. Rather, it simply vacated this Court's grant of summary judgment in favor of Markley because it found sufficient factual disputes with respect to the second search. *Gomez*, 385 Fed. App'x at 83.

After vacating this Court's decision with respect to the second search only, the Court of Appeals remanded for further proceedings consistent with its opinion. *Id*. Because the appellate court recognized the existence of disputed facts, proceedings consistent with its opinion include a jury trial to resolve those disputed facts. The Court is therefore not persuaded by Gomez's efforts to characterize the decision of the Court of Appeals as mandating a finding that the second search actually occurred.

> **ii. Even Assuming that the Court of Appeals Conclusively Found for Gomez, There Are Two Applicable Exceptions to the Law of the Case Doctrine**

The mandate rule to which Gomez refers requires trial courts to "proceed in accordance with the mandate and the law of the case as established on appeal." *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985). The mandate rule "is nothing more

than one specific application of a general doctrine appellate courts apply to their orders to lower courts, a doctrine commonly referred to as the law of the case…" *United States v. Butenko*, 494 F.2d 593, 639 (3d Cir. 1974) (citing *Briggs v. Pennsylvania R.R.*, 334 U.S. 304, 306 (1948); *Ex Parte Sibbald v. United States*, 37 U.S. (12 Pet.) 488, 492 (1838)).

Although the "law of the case" doctrine will typically require a lower court to follow a mandate of a higher court, there are several exceptions to the doctrine that are applicable here. The first notable exception is where "new evidence is available to the second judge when hearing the issue." *See Schultz v. Onan Corp.*, 737 F.2d 339, 345 (3d Cir. 1984) (citing *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1981)). Here, the only evidence "available" to the Court of Appeals was the evidence that was most favorable to Gomez. The new evidence available to the second judge, i.e., this Court, and the jury was Markley's conflicting testimony. Given the factual dispute, this Court appropriately instructed the jury to determine whether the second search had actually occurred, and the jury found that the search had **not** occurred. (*See* Docket No. [142]). Having established, by way of a jury verdict, that the second search did not, in fact, occur, this Court had evidence available to it that directly conflicts with the evidence available to the Court of Appeals. This Court is therefore not required by the mandate rule to follow the "ruling" of the Court of Appeals on the factual matter of whether a search occurred.

The second relevant exception to the law of the case rule is the "manifest injustice" rule. Although this exception has never been expressly adopted by the Court of Appeals for the Third Circuit, *see Schultz*, 737 F.2d at 346, the Supreme Court has recognized the rule. *See Arizona v. California*, 460 U.S. 605, 618 n.8 (1983). The outcome that Gomez seeks would effectively deny Markley the opportunity to present factual information because, due to the procedural posture of the case, only Gomez's version of the facts was before the Court of Appeals. This Court views

such an outcome as a manifest injustice, and believes this case falls within the manifest injustice exception under Gomez's reading of the opinion and mandate of the Court of Appeals.

Under either of these exceptions, the Court notes that it is not obligated to follow what Gomez believes to be a mandate from the Court of Appeals. To the contrary, because this Court had additional evidence before it that the Court of Appeals did not have the benefit of reviewing, and because refusing to acknowledge such evidence would work a manifest injustice, this Court was within the bounds of its authority in putting to the jury the question of whether the second search occurred.

### iii. Even if Law of the Case is Applicable, Gomez is not Entitled to Judgment as a Matter of Law

Finally, Gomez argues that the Court of Appeals "settled" the question of whether the second search occurred. (Docket No. [174] at 2). Based on this conclusion, Gomez seems to claim that any factual determinations made by this Court (or its jury) should have been limited to the question of whether Markley had probable cause. (*See* Docket No. [161] at ¶ 3). The thrust of his argument, then, appears to be that he is entitled to judgment notwithstanding the verdict because the question upon which the jury decided his case, i.e., whether the second search occurred, was a nullity and he must therefore win as a matter of law.

Gomez's argument is unpersuasive. Gomez acknowledges in his motion that there is still the question of whether Markley had probable cause with respect to the second search. (*See* Docket No. [161] at ¶ 3). Due to the factual dispute as to probable cause, this Court must construe the facts in favor of Markley as the nonmovant. *Keith*, 909 F.2d at 745. Markley's version of the facts includes: Gomez's conflicting information about where he was from and/or where he lived; Gomez's nervousness; Gomez's bloodshot eyes; and a marijuana seed on Gomez's driver's seat. (Docket No. 51 at 22-23). Drawing the facts in Markley's favor, as the

16

Court must, there is sufficient justification for probable cause to overcome Gomez's motion for judgment as a matter of law. Gomez's motion for judgment must therefore be denied on this ground, even if the actual occurrence of the second search had been established by the Third Circuit. *See McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) ("A motion for judgment as a matter of law under Federal Rule 50(a) should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law.") (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)).

At best, Gomez could have moved for a new trial in order to address what he considers to be the deciding question. However, as addressed above, Gomez failed to file a motion for new trial within the time allotted by Rule 59. This relief is therefore unavailable to him as well.

### d. Markley's Argument that Appeal is Frivolous

As the Court has disposed of Gomez's motions, it is not necessary for the Court to address Markley's argument that Gomez's appeal is "not taken in good faith." (*See* Docket No. 167 at 2). Given Gomez's *pro se* status, this Court is not willing, at this point, to certify that Gomez is proceeding in bad faith, largely because the Court believes he simply does not understand the effect of the assumption, for purposes of summary judgment, of this Court and the Court of Appeals that the second search actually occurred. Indeed, as Gomez himself admits, he is "yet to pass the bar." (Docket No. 174 at 3). For this reason, the Court declines Markley's invitation to certify that Gomez has pursued these motions, and the currently-pending appeal, in bad faith.

## V. Conclusion

For the foregoing reasons, Defendant's Motions, (Docket No. [161]) are DENIED. An appropriate order follows.

                                                  *s/Nora Barry Fischer*
                                                  Nora Barry Fischer
                                                  United States District Judge

Date: June 28, 2011


cc/ecf: All counsel of record

       John Paul Gomez
       1 Ridenour Street
       Pittsburgh, PA 15205
       (*by regular and certified mail*)